UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH RUMBLE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>    Defendant. | Case No. 13-cv-02157-WHO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 13, 18 |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS for further proceedings consistent with this ORDER.

**BACKGROUND**

**I.      Procedural History**

On November 25, 2009, plaintiff Ralph Rumble applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Administrative Record ("AR") 23. His application was denied initially and again on reconsideration. AR 74-77, 82-83. He requested a hearing and appeared before Administrative Law Judge ("ALJ") David R. Mazzi on January 10, 2012. AR 23. On January 27, 2012, ALJ Mazzi denied his claim for benefits. AR 20-34. ALJ Mazzi's January 2012 denial became the Commissioner's final decision when the Appeals Counsel declined review on March 8, 2013. AR 1-3. On May 10, 2013, Rumble filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. Now pending before the Court are Rumble's motion for summary judgment, filed September 17, 2013, and the Commissioner's

cross-motion for summary judgment, filed November 1, 2013.  Dkt. Nos. 13, 18.

## II.     Rumble's Impairments

When Rumble applied for SSI in 2009, he indicated that his disability dated back to an accident in 2005.  AR 138.  Rumble was on a rope swing, fell approximately two stories, and fractured the lateral lumbar processes at 2 or 3 levels, resulting in chronic back pain.  AR 263.  His other ailments include a heart condition caused by Wolf-Parkinson-White syndrome, diabetes, and stage two kidney disease with proteinuria.  Rumble's Motion for Summary Judgment ("Pl.'s Mot.") at 4.  In August 2009, he also suffered from "profound lower extremity swelling."  AR 350, 659.

Rumble has a long history of substance abuse, including cannabis, methamphetamine dependence, and opioid dependence.  AR 264, 289.  He takes several medications: Suboxone for chronic back pain, oral pills and Lantus insulin for diabetes, Lexapro daily since 2008 for anxiety and depression.  Pl.'s Mot. at 4-5; AR 290, 575.  Other medications include Zovirax, Celexa (daily), Guanfacine (daily), and Simvastatin (daily).  AR 564, 206.  Rumble has a history of domestic violence and participated in anger management and substance abuse therapy.  AR 196, 290, 589-91.

Rumble regularly visited several doctors.  From 2005 through 2011, he saw nephrologist Dr. James S. Robertson for monitoring of his chronic kidney disease.  AR 555-71.  Dr. Robertson's most recent notes from November 21, 2011, indicate that "Mr. Rumble's diabetes remains uncontrolled."  AR 557.  Dr. Robertson "stressed to [Rumble] that [Rumble] will need meticulous insulin use monitored multiple times daily, rather than occasional weekly blood sugar measurements, if he is to preserve his kidney function."  AR 557.

From February 2009 through December 2011, Rumble consistently visited the Mendocino Community Health Clinic for either medication management, substance abuse, chronic pain, or diabetes.  AR 556-71, 573-664.  His treating physician, Dr. Thomas Bertolli, has treatment notes for visits with Rumble on July 11, 2011, August 11, 2011, and September 7, 2011.  AR 592, 601, 584.  On July 7, 2011 and August 11, 2011, Dr. Bertolli reported that Rumble was negative for fatigue, chest pain and irregular heartbeat/palpitations, and psychiatric symptoms.  AR 593, 602.

On September 7, 2011, Dr. Bertolli indicated that Rumble was negative for fatigue, chest pain and irregular heartbeat/palpitations and "having more pain in back." AR 584, 586. Most of the treatment notes from other Mendocino Community Health Clinic doctors indicate "no unusual anxiety or evidence of depression" or "negative for psychiatric symptoms," and were "negative for fatigue, chest pain, and irregular heartbeat/palpitations." E.g., AR 602, 615, 645, 651. The treatment notes from April 28, 2010, August 30, 2010, December 6, 2010, and March 7, 2011 indicate that Rumble's "[e]xtremities appear normal. No edema or cyanosis." AR 616, 630, 640, 650. Treatment notes from other visits did not comment on Rumble's extremities.

Since applying for SSI, several medical professionals reviewed Rumble's psychological and physical health. On March 8, 2010, the Department of Social Services referred Rumble to clinical psychologist Dr. Philip M. Cushman for psychological testing to evaluate his cognitive functioning. AR 287-93. Dr. Cushman concluded that Rumble appears "capable of performing simple and repetitive tasks in a work setting" and "capable of following simple verbal instructions from supervisors." AR 293. He also concluded that Rumble is "capable of regularly attending and consistently participating in a work setting," but "has very little experience with such a routine" and "would have a difficult time working a normal workday or work week for any length of time," and "great difficulties getting along with supervisors, coworkers and the general public for any length of time." AR 293. State agency psychological consultant, Dr. Eugene Campbell, completed a Psychiatric Review Technique on April 2010. AR 303. Dr. Campbell opined that Rumble, apart from drug dependencies, did not have clear psychiatric diagnosis and did not have a medically determinable impairment. AR 319. On August 2010, psychological consultant, Dr. Kim Morris, also completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. AR 450, 461. Dr. Morris determined that Rumble has affective, personality, and substance addiction disorders, and that Rumble is capable of completing simple tasks with moderate limitations. AR 450, 460.

As to Rumble's physical limitations, on February 27, 2010, Dr. Umer Malik consultatively examined Rumble and noted that upon deep palpation of the lower back, Rumble complained of some tenderness. AR 280. Dr. Malik opined that Rumble can stand, walk, or sit for up to six

hours and has no limitations with climbing, balancing, stooping, crouching, crawling, reaching, handling, fingering, and feeling. AR 280-81. On March 9, 2010, medical consultant Dr. P. Bianchi assessed Rumble and opined that he has no manipulative limitations,[1] can stand, walk, or sit for about six hours in an eight-hour workday, and has occasional limitations with climbing, balancing, stooping, kneeling, crouching, and crawling. AR 294-98. On August 4, 2010, medical consultant Dr. H. Pham also opined that Rumble has no manipulative limitations and can stand, walk, or sit for about six hours in an eight-hour workday. AR 446-49.

Rumble's treating physician, Dr. Bertolli, completed a medical source statement on December 13, 2011. AR 670-72. In that statement, Dr. Bertolli indicated that signs, findings, and associated symptoms of Rumble's impairments include fatigue, occasional dizziness/loss of balance, muscle spasm, muscle weakness, hyper/hypoglycemic attacks, palpitations, episodic vision blurring, impaired sleep, weakness, syncope, rapid hearth beat/chest pain, extremity pain and numbness, kidney problems, arrhythmia, exercise intolerance, and chronic depression. AR 670, 672. Dr. Bertolli opined that in an eight-hour work day with normal breaks, Rumble can sit at least six hours and stand or walk for at least two hours. AR 671. He also opined that Rumble would need to take unscheduled breaks all day and that during an eight-hour work day, Rumble can use his hands and fingers 30 percent of the time and his arms five percent of the time. AR 671-72.

In the ALJ's evaluation of Rumble's disability, the ALJ determined that Rumble has the following severe impairments: chronic lower back pain, arrhythmia, an affective disorder, a personality disorder, and substance abuse disorders. AR 25. The ALJ also determined that Rumble has other "medically determinable impairments such as marginal obesity, diabetes, proteinuria, and others," but that there was insufficient evidence to show that these impairments more than minimally affected Rumble's ability to perform basic work functions. AR 26. At step three, the ALJ found that Rumble did not suffer from an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

---

[1] Manipulative limitations are limitations with reaching, handling, fingering, or feeling. AR 672.

4

Appendix 1. AR 26. The ALJ also found that Rumble has the residual functional capacity to perform light work, that he is able to perform simple, repetitive tasks equating to unskilled work, and that there are jobs that exist in significant numbers in the national economy that Rumble can perform. AR 26-33. In light of those findings, the ALJ found that Rumble was not disabled and not entitled to SSI.

## LEGAL STANDARD

### I. Disability Determination

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the first two steps of the evaluation, the claimant must establish that he or she (1) is not performing substantial gainful activity, and (2) is under a "severe" impairment. *Id*. § 416.920(a)(4)(i)-(ii). An impairment must have lasted or be expected to last 12 months in order to be considered severe. *Id.* § 416.909. In the third step, the claimant must establish that his or her impairment meets or medically equals a listed impairment described in the administrative regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, before proceeding to the fourth step, the ALJ is to make a residual functional capacity determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e). In step four, the claimant must establish that his or her impairment prevents the claimant from performing relevant work he or she did in the past. *Id.* § 416.920(a)(4)(iv). The claimant bears the burden to prove steps one through four, as "[a]t all times, the burden is on the claimant to establish [his]

5

entitlement to disability insurance benefits." *Id.* (alterations in original). Once the claimant has established this prima facie case, the burden shifts to the Commissioner to show at the fifth step that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that the claimant can do. *Id.* §§ 416.920(a)(4)(v),(g); 416.960(c).

## II. Standard of Review

Under 42 U.S.C. § 405(g), the Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521-22 (9th Cir. 1996) *quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).

The Court must review the record as a whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Rumble seeks summary judgment based on two arguments: (1) the ALJ improperly rejected the opinion of treating physician, Dr. Bertolli; and (2) the ALJ failed to consider all of Rumble's medically determinable impairments. The Commissioner opposes because, in her view, the ALJ's decision is based on substantial evidence and is free of reversible error.

### I. Treating Physician's Opinion

Rumble argues that the ALJ improperly rejected and gave reduced weight to the limitations

and findings that his treating physician, Dr. Bertolli, made in his medical source statement. Pl.'s Mot. at 6. The Commissioner contends that the ALJ considered Dr. Bertolli's opinion and properly discounted his opinion because his assessed limitations were inconsistent with treatment notes and lacked sufficient objective support. Defendant's Motion for Summary Judgment ("Def.'s Mot.") at 13-14.

Controlling weight is given to the opinion of a treating physician in disability determinations as it "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with substantial evidence in a claimant's file, then the opinion will be given controlling weight over the opinions of non-treating physicians. *Id.*; *see also Orn*, 495 F.3d at 631 (discussing regulations regarding analysis of treating physician opinions). The ALJ may discredit conclusory or brief opinions, and those that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ cannot ignore or reject the judgment of a treating physician, even when that judgment is controverted by another physician, without "'specific and legitimate' reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 831 n.8 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(d)(2). An ALJ may "meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

The Court cannot conclude that the ALJ erred in discounting Dr. Bertolli's opinion and assessed limitations. The ALJ considered Dr. Bertolli's opinion and gave it reduced weight "because it is not consistent with the record as a whole, particularly [Dr. Bertolli's] own treatment records or the treatment records of other caregivers at his medical facility." AR 32. The ALJ also found that "there does not appear to be any basis for manipulative limitations in the record." AR 32. Rumble argues that the record shows that he suffers from diabetes, kidney damage and

7

proteinuria. Pl.'s Mot. at 8-9. He also argues that some of the treatment notes in the record indicate fatigue and back pain. Rumble's Reply at 5. Although Rumble is correct that the record indicates that he suffers from diabetes and kidney damage and proteinuria, and that some notes indicate fatigue and back pain, the notes and the record as a whole do not adequately support the manipulative or functional limitations that Dr. Bertolli indicated. Indeed, apart from Rumble's conclusory arguments, Rumble does not point to evidence in the record to prove otherwise. Moreover, consulting physicians Dr. Malik, Dr. Bianchi, and Dr. Pham all opined that Rumble has no manipulative limitations and can sit, stand, or walk for up to six hours. AR 280-81, 295-96, 446-47. Accordingly, the Court concludes that the ALJ set forth specific, legitimate reasons supported by substantial evidence in the record for giving Dr. Bertolli's opinion about Rumble's limitations reduced weight.

## II.     Medically Determinable Impairments

Rumble also argues that the ALJ failed to consider all of his medically determinable impairments. Pl.'s Mot. at 6. Rumble asserts that the ALJ's decision about the severity of his mental impairment is not supported by the record. *Id*. He argues that the record shows that he had behavioral problems and was socially isolated, and that the ALJ failed to consider the level of daily activity described by his lay witnesses. *Id*. at 6-7. Moreover, Rumble asserts that his diabetes and related complications like kidney disease with proteinuria are severe impairments. *Id*. The Commissioner contends that the ALJ properly considered each of Rumble's alleged impairments. Def.'s Mot. at 8.

The Court concludes that the ALJ properly considered Rumble's physical impairments, and the record supports the ALJ's findings on this point. Rumble contends that his diabetes and related complications are severe and the record reflects his ailments were worsening. Rumble's Reply at 4. Although the record shows that Rumble suffered from diabetes and regularly saw a nephrologist to treat his kidney disease, the record as a whole does not adequately demonstrate how Rumble's diabetes and kidney disease affected Rumble's ability to perform basic work functions. Indeed, in the ALJ hearing, Rumble did not testify about how diabetes, kidney disease or related symptoms affected him. AR 40-65. Moreover, Rumble fails to cite the record to

1  support the assertion that diabetes and kidney disease restricted Rumble's basic work functions.

2  As to Rumble's mental impairments, the Court has some concerns. In evaluating the lay witness evidence in the record, the ALJ gave short shrift to the statements of Rumble's mother and none at all to Rumble's uncle, both of whom described Rumble's mental impairments and limitations of function. "[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Rusten v. Comm'r of SSA*, 468 Fed. Appx. 717, 719 (9th Cir. 2012). The ALJ did not give specific reasons germane to each witness for discounting or ignoring their statements.

Rumble's mother, Deborah Rumble, completed a Third Party Function Report about Rumble's daily activities and abilities on January 4, 2010. AR 183-90. She also wrote a letter on January 9, 2012, describing her son's health impairments and its impact on his daily life. AR 240. In the Third Party Function Report, Mrs. Rumble reported that Rumble lived in her motorhome, that she saw him daily,[2] and that she and her husband primarily cared for Rumble's two children because Rumble was "so volatile and unstable at times." AR 183-84. She indicated that her son sporadically does chores with encouragement or incentives from her, that he only spends time with family, that "he always had a problem with social situations," "problems with authority figures," and "issues with getting along with people." AR 184-90. She noted that Rumble is a "recluse," "very anti-social," goes outside infrequently and becomes very agitated when he is grocery shopping. AR 184-90.

In determining whether Rumble's mental impairments met or equaled one of the listed impairments, the ALJ's analysis of restrictions on Rumble's daily living activities, social functioning, and concentration, persistence or pace mentions some of Mrs. Rumble's statements. AR 27. He gave them only "some weight in assessing the claimant's residual functional

---

[2] The motorhome is located behind Mrs. Rumble's home. Pl.'s Mot. at 5.

9

capacity." AR 32. The ALJ provided no explanation or specific reasons for discounting Mrs. Rumble's statements. The Court cannot tell to what extent the ALJ considered Mrs. Rumble's statements in determining the severity of Rumble's mental impairments and restrictions in daily living, social functioning, and concentration, persistence or pace. *See Riggs v. Astrue*, No. 07-cv-5242, 2008 U.S. Dist. LEXIS 92922, at *30 (W.D. Wash. Mar. 31, 2008) (finding that the ALJ erred by not explaining what the ALJ meant when he gave lay witness evidence "some but not great weight"), *adopted by Riggs v. Astrue*, No. 07-cv-5242, 2008 U.S. Dist. LEXIS 34549.

Moreover, the ALJ did not explain whether, if at all, he considered the lay witness statement provided on January 8, 2012, by Rumble's uncle, John R. Prellwitz. Mr. Prellwitz indicated that he knew Rumble very well and that he and Rumble worked together briefly. AR 248. Mr. Prellwitz described Rumble in a work setting as someone who "cannot be told what to do without [Rumble] 'blowing up.'" AR 248. Lay witness testimony cannot be disregarded without comment. *Stout*, 454 F.3d at 1053.

The Court is left to guess why the ALJ gave only some weight to the lay evidence provided by Mrs. Rumble and none to Mr. Prellwitz. The ALJ erred in discounting Mrs. Rumble's statements without explanation and by ignoring and failing to explain why he ignored Mr. Prellwitz's statement.

These errors matter because apart from discounting and ignoring lay evidence, the ALJ also discounted the opinion of consultative examining psychologist, Dr. Cushman, which was consistent with the lay evidence. The ALJ found that:

> For the most part, Dr. Cushman's opinion is given weight as his evaluation and the record as a whole generally support it. However, neither his suspicion of an inability to persist at a normal workday or workweek, nor his opinion that the claimant would have difficulties dealing with others, is supported by a preponderance of the evidence.

AR 31. A contradicted opinion of an examining doctor may be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. The ALJ discounted Dr. Cushman's opinion that Rumble would have difficulties dealing with others and working a normal workday or workweek because that opinion was not supported

10

by a preponderance of the evidence. The ALJ erred by not providing further explanation, especially since Rumble's testimony and Mrs. Rumble's and Mr. Prellwitz's lay statements are consistent with Dr. Cushman's opinion. AR 47, 183-90, 241, 248. The psychological consultant, Dr. Morris, determined that Rumble has affective and personality disorders, which would also seem relevant to this determination when combined with Dr. Cushman's opinion and the lay testimony.

The errors by the ALJ are material to the analysis of whether the combination of Rumble's impairments meet one of the listed impairments and whether he had the residual functional capacity to perform light work in a job that exists in significant numbers in the national economy. Accordingly, it is necessary to remand this matter for further proceedings.

## CONCLUSION

For the reasons above, the Court GRANTS Rumble's motion for summary judgment, DENIES defendant's motion for summary judgment, and REMANDS the case for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: February 20, 2014

WILLIAM H. ORRICK
United States District Judge